NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| RONALD R. PETERSON, as Chapter 7 Trustee for Lancelot Investors Fund, L.P., et al., | Hon. Dennis M. Cavanaugh |
| Plaintiff, | OPINION |
| v. | Civil Action No. 2:13-cv-00537 (DMC)(JBC) |
| HANS IMHOF, WELLS L. MARVIN, THE RUSSELL ELDON HATLE AND LORRAIN LOUIS HATLE REVOCABLE TRUST, THE L.HATLE TRUST, DATED DECEMBER 30, 1991, JEFFREY WOLFER, KEVIN WOLFER, GREGG WOLFER, and KENNEDY FUNDING, INC. | |
| Defendants. | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon the Motion of Defendants Hans Imhof, Wells L. Marvin, The Russell Eldon Hatle and Lorraine Louise Hatle Revocable Trust, and The L. Hatle Trust, Dated December 30, 1991 ("Defendants" or the "Clearwater Guarantors") to Dismiss Counts I, II, III, and IV of the Amended Complaint of Ronald R. Peterson ("Plaintiff"), pursuant to FED. R. CIV. P. 12(b)(6). Pursuant to FED. R. CIV. P 78, no oral argument was heard. Based on the following and for the reasons expressed herein, Defendants' Motion is **denied**.

1

## I.  BACKGROUND[1]

On October 26, 2007, Kennedy Funding, Inc. ("Kennedy") entered into a Loan and Security Agreement (the "Loan Agreement") with Clearwater Development, Inc. ("Clearwater Development"). Clearwater Development also executed a $47,142,500 promissory note (the "Note") in favor of Kennedy at this time. Further, the Clearwater Guarantors each executed a guaranty of the underlying loan (the "Guaranty"). The Loan and Security Agreement, the Note, and the Guaranty will be collectively referred to as the "Loan Documents."

On November 8, 2007, KD8, LLC ("KD8") was formed as a Delaware limited liability company. On November 16, 2007, KD8 and Kennedy entered into a co-lenders agreement (the "Co-Lenders Agreement"), pursuant to which KD8 acquired 43.52% of the Loan. The Co-Lenders Agreement expressly states that Kennedy Funding is to obtain the consent of all of the Co-Lenders in order to release any Defendant Guarantor from its guaranty obligation. Specifically, section 6(a) of the Co-Lenders agreement, which is attached to Plaintiff's Complaint, provides the following: "There shall be required the written consent of the Required Lenders to . . . [c]onsent to or permit any substitution, withdrawal or release of any collateral, any Guarantor or any other security securing the payment of the Loan except in accordance with the terms of the Notes and Loan Documents and other related documents" (Compl Ex. 4 at 3).

On October 20, 2008, KD8 filed for bankruptcy in the United States Bankruptcy Court for the Northern District of Illinois. Thereafter, Plaintiff was appointed as Chapter 7 Trustee of KD8. Plaintiff alleges that on July 17, 2009, the Clearwater Guarantors and Kennedy, without the knowledge or required consent from Plaintiff, in clear violation of the Co-Lenders Agreement, and without obtaining relief from the automatic stay imposed by section 362(a)(3) of

---

[1] The facts from this section are taken from the parties' pleadings.

the Bankruptcy Code, entered into a Modification of Guaranty (the "Guaranty Modification"). Plaintiff claims that this Guaranty Modification purported to release the Clearwater Guarantors from $23,000,000 of liability to the Co-Lenders, including KD8, in exchange for the payment of $500,000 and a promise to fund the upkeep of the real estate that served as a collateral for the loan obligations (the "Subject Property") from May 1, 2009 to April 30, 2011, in the amount of $3,000,000. Plaintiff claims that it first discovered the existence of the Guaranty Modification no earlier than May 2010. Plaintiff asserts that Clearwater Development has failed to pay amounts it owes under the Loan Documents and has been in default since January 2009. On April 18, 2011, Clearwater Development filed a voluntary petition for bankruptcy. Plaintiff alleges that as of that date, Clearwater Development owed the Co-Lenders approximately $62.3 million in principal and interest, of which approximately $27.11 million was owed to Plaintiff. Plaintiff claims that no payments have been made after that date, and that interest continues to accrue.

 Plaintiff originally filed a complaint against Defendants in the United States Bankruptcy Court for the Northern District of Illinois on April 27, 2012. Upon request of Defendants, the United States District Court for the Northern District of Illinois withdrew the reference for Plaintiff's action, effectively transferring the case to that court. The Northern District of Illinois then dismissed the action based on improper venue. Subsequently, the Northern District of Illinois granted Plaintiff's motion to amend the dismissal order and ordered the transfer of this case to the District of New Jersey.

 On March 7, 2013, this Court granted Plaintiff's Motion for Leave to File an Amended Complaint (ECF No. 60). Plaintiff filed an Amended Complaint on March 8, 2013, alleging eleven counts, four of which are asserted against the instant Defendants: i) violation of the automatic stay imposed by 11 U.S.C. § 362(a)(2); ii) breach of contract; iii) declaratory relief

pursuant to 28 U.S.C. § 2201; and iv) avoidance of postpetition transfer pursuant to 11 U.S.C. § 549(a) ("Compl.," ECF No. 62). Defendants filed a Motion to Dismiss Counts I, II, III, and IV on March 22, 2013 ("Def.'s Mot.," ECF No. 66). Plaintiff Filed a Brief in Opposition on April 22, 2013 ("Pl.'s Opp'n," ECF No. 70). Defendants filed a Reply Brief on April 29, 2013 (ECF No. 71).

## II.   STANDARD OF REVIEW

In deciding a motion under FED. R. CIV. P. 12(b)(6), the District Court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions and a formulaic recitation of the elements of a cause of action will not do." Id. On a motion to dismiss, courts are "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). Plaintiff's complaint is subject to the heightened pleading standard set forth in Ashcroft v. Iqbal:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged . . . Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief."

556 U.S. 662, 678-679 (2009) (quoting Twombly, 550 U.S. at 557, 750).

## III.   DISCUSSION

4

### A. Count I Arguments

Count I of the Complaint alleges that Defendants violated the automatic stay provision imposed by the Bankruptcy Code by executing the Guaranty Modification. The Bankruptcy Code provides that a petition filed under title 11 of the United States Code "operates as a stay, applicable to all entities, of . . . any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3).

**1) Statute of Limitations**

Defendants concede that the Bankruptcy Code does not expressly provide a statute of limitations for violations of the automatic stay (Def.'s Mot. at 8). However, Defendants argue that "in circumstances similar to the ones here, courts have applied the limitations period articulated in Section 549" – which is two years (Id. at 8-9). Defendants cite to In re E-Tron Corp, 141 B.R. 49 (D.N.J. 1992) for this proposition.

In E-Tron, the court stated that transfers of property or interests in property in violation of the automatic stay are subject to the statute of limitations set forth in 11 U.S.C. § 549(d)(1). Id. at 55. Plaintiff asserts that E-tron is an isolated case that "far from announce[d] a general principal" (Pl's Opp'n at 16). However, while courts in this circuit have not yet commented on the holding in E-tron, courts in other circuits have recognized it as broad. See In re Rothenberg, 173 B.R. 4, 13 (Bankr. D.D.C. 1994) (stating that E-Tron held that the statute of limitations in section 549(d) "applies to [a] trustee's action to avoid [a] transfer as void in violation of the stay"); In re Wills, 226 B.R. 369, 377 (Bankr. E.D. Va. 1998) (stating that E-Tron held that "transfers in violation of [the] automatic stay [are] still subject to § 549(d)'s statute of limitation").

In the present case, Count I asserts that Defendants violated the automatic stay by executing the postpetition Guaranty Modification because Plaintiff has property rights under the

Loan Documents. Essentially, Count I is premised on a claim that Defendants transferred a property interest in violation of the automatic stay. Therefore, under E-Tron, the two year statute of limitations in section 549(d)(1) applies. Plaintiff's argument that the majority of courts have held that no statute of limitations applies for violations of the automatic stay is unavailing because the Court in E-Tron expressly declined to follow decisions from other courts that came to this conclusion. See E-Tron, 141 B.R. at 55. Therefore, because the Guaranty Modification was signed on July 17, 2009 and Plaintiff's original Complaint was filed on April 27, 2012, Plaintiff's claim is not timely under section 549(d)(1). However, as discussed infra, Plaintiff has a viable argument that equitable tolling should apply to the section 549 claim that is the subject of Count IV. Because this Court finds that section 549's statute of limitations is applicable to Count I, Plaintiff's equitable tolling claim is also applicable to Count I. Therefore, Defendants' Motion to Dismiss is denied.

### 2) Laches

Defendants' second argument with respect to Count I is that the claim is barred by the doctrine of laches. A defendants asserting laches must made two showings: 1) inexcusable delay by the plaintiff in bringing suit, and 2) prejudice to the defendant from the delay. Gruca v. U.S. Steel Corp., 495 F.2d 1252, 1258 (3d Cir. 1974). When a laches defense depends on disputed facts, "it is inappropriate to make a determination on a motion to dismiss." Kaufhold v. Caiafa, 872 F. Supp. 2d 374, 380 (D.N.J. 2012).

Count I of the Amended Complaint was not in Plaintiff's original Complaint. Defendants argue that laches applies because Plaintiff first learned about the Guaranty Modification in May 2010, yet did not assert a claim for violation of the automatic stay until nearly three years later (Def's Mot. at 11). Further, Defendants claim that they have been prejudiced because under the

6

Guaranty Modification, they were required to maintain the Subject Property from May 1, 2009 through April 30, 2011 and spend at least $3,000,000 in connection with those maintenance efforts (Id. at 11-12). Thus, Defendants assert the following:

> If, in May 2010, the Trustee had asserted that the [Guaranty Modification] was void, the Clearwater Guarantors might not have maintained the Subject Property in the manner they did from May 2010 to April 30, 2011, and could have made alternative decisions regarding how to utilize the millions of dollars they put into the Subject Property

(Id. at 12). Plaintiff, however, argues that the Amended Complaint asserts that he learned about the Guaranty Modification "no earlier" than May 2010 (Pl.'s Opp'n at 19 n.5). Plaintiff asserts that he "expects that the evidence will demonstrate that . . . Plaintiff actually learned of the Guaranty Modification in May or June of 2011, which is after the Defendants' obligation to maintain the property ceased" (Id.). Thus, the defense of laches turns on disputed facts and cannot properly be decided in a motion to dismiss.

### 3) Failure to Describe a Legally Adequate Claim

Defendants' third argument with respect to Count I is that Plaintiff's Complaint does not describe a legally adequate claim for violation of the automatic stay. Section 362 of the Bankruptcy Code provides that a petition filed under title 11 of the United States Code "operates as a stay, applicable to all entities of . . . any act to obtain possession of property of the estate or against property of the estate, or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Section 541 defines "property of the estate" as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The Third Circuit has stated that "the expansive nature of § 541's property definition encompasses rights and interests arising from ordinary contractual relationships." Westmoreland Human Opportunities, Inc. v. Walsh, 246 F.3d 233, 242 (3d Cir. 2001).

In the present case, the automatic stay went into effect when KD8 filed for bankruptcy.

Plaintiff asserts that KD8 has a property interest in the Loan Documents due to the Co-Lenders Agreement, pursuant to which KD8 acquired 43.52% of the Loan. Further, Plaintiff alleges that Defendants did not seek permission to execute the Guaranty Modification, and therefore impaired KD8's property rights. As Plaintiff's factual allegations must be accepted as true, Plaintiff has stated a claim under 11 U.S.C. § 362(a)(3).

### 4) Disguised Claim for Violation of Section 549

Defendants' final argument regarding Count I is that "Count I is just a disguised claim for violation of Section 549" (Def's Mot. at 16). The cases Defendants cite to for this proposition are inapplicable. For example, Defendants cite to In re Shah, No. 99-34723, 2001 WL 423024 (Bankr. E.D. Pa. Apr. 10, 2001) for the proposition that a claim such as Plaintiff's is governed by section 549 rather than section 362. However, in Shah, the court found that section 549 was applicable due to the good faith purchaser exception set forth in section 549(c), which is available as a defense to claims made under section 362. Id. at *6-7. Defendants cite E-Tron for the same proposition as Shah. (Def's Mot. at 17). However, the court in E-tron decided that section 549's statute of limitations applied to section 362 claims – it did not decide that claims alleging a postpetition transfer in violation of the automatic stay cannot be brought under section 362. See 141 B.R. at 54-55. As discussed above, Plaintiff has pled sufficient facts to survive a motion to dismiss the 11 U.S.C § 362 claim. Accordingly, Defendants' Motion is denied.

### B. Counts II-IV Standing Argument

Defendants assert that Counts II, III, and IV should be dismissed because KD8 does not have standing to enforce the Loan Documents against Defendants. Under New Jersey law, if a plaintiff is not an express party to a contract, the plaintiff must be an intended beneficiary in order to have contractual standing. Broadway Maint. Corp. v. Rutgers, State Univ., 447 A.2d

906, 909 (N.J. 1982). Plaintiff concedes that New Jersey law applies (See Pl's Opp'n at 24-27).

In the present case, Defendants argue that Plaintiff does not have standing because KD8 was not an express party named in any of the Loan Documents and could not have been an intended beneficiary because KD8 was not in existence at the time the Loan Documents were executed (Def's Mot. at 20, 22). However, the facts as pleaded by Plaintiff, which must be accepted as true at this time, show that KD8 was a partially disclosed principal to the Loan Agreement. A partially disclosed principal is defined as follows: "If the other party *has notice* that the agent is or may be acting for a principal but has no notice of the principal's identity, the principal for whom the agent is acting is a partially disclosed principal." African Bio-Botanica, Inc. v. Leiner, 624 A.2d 1003, 1006 (N.J. Super. App. Div. 1993) (quoting Restatement (Second) of Agency §4(2) (1958)). Here, Plaintiff has alleged that Kennedy entered into the Loan Agreement "as an agent for . . . lenders" (Compl. ¶ 18). The Loan Agreement does in fact state that Kennedy is acting as an agent for the lenders listed in Schedule D of the Loan Agreement (Id. Ex. 1 at 1). Although Schedule D is blank, Plaintiff asserts that Defendants "were on notice that Kennedy . . . was acting for principals even if they did not know the identity of the principals" (Pl.'s Opp'n at 25). Further, although KD8 was not in existence at the time the Loan Agreement was executed, Plaintiff claims that the identities of the lenders were not finalized until November 16, 2007, when the Co-Lenders agreement was executed (Id. at 24). Therefore, Defendants' argument that Counts II-IV should be dismissed due to lack of standing must fail.

### C. Count IV Statute of Limitations Argument

Defendants' final argument is that Count IV should be dismissed because it is barred by the two-year statute of limitations set forth in 11 U.S.C. § 549(d)(1). As discussed above, because the Guaranty Modification was signed on July 17, 2009 and Plaintiff's original

9

Complaint was filed on April 27, 2012, Plaintiff's claim is not timely under section 549(d)(1). However, Plaintiff argues that the statute of limitations should be equitably tolled.

The two year statute of limitations in section 549(d)(1) "can be equitably tolled where the postpetition transfers the trustee seeks to avoid have been concealed." E-tron, 141 B.R. at 55. When the statute is tolled, it "will not begin to run until [the postpetition transfers] have been discovered, or, through reasonable diligence, should have been discovered." In re Bookout Holsteins, Inc., 100 B.R. 427, 430 (Bankr. N.D. Ind. 1989). Here, Plaintiff asserts that Defendants concealed the Guaranty Modification and that there was no reason that Plaintiff should have known about it until May 2010 at the earliest (Pl's Opp'n at 30). If the statute of limitations started to run in May 2010, Plaintiff's April 27, 2012 Complaint would be timely. Because Plaintiff's factual allegations must be accepted as true, Defendants' Motion to Dismiss is denied. See In re G-I Holdings, Inc., 313 B.R. 612, 648 (Bankr. D.N.J. 2004) ("The question of whether a statute of limitations should be equitably tolled is necessarily a factual one and is usually not ripe for consideration on a motion to dismiss.").

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is **denied**. An appropriate order follows this Opinion.

Dennis M. Cavanaugh, U.S.D.J.

Date:  October 7, 2013
Original:  Clerk's Office
cc:  Hon. James B. Clark U.S.M.J.
     All Counsel of Record
     File