UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| RONALD R. PETERSON, as Chapter 7 Trustee for Lancelot Investors Fund, L.P., *et al.* and MAA, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>HANS IMHOF, THE RUSSELL ELDON HATLE AND LORRAINE LOUISE HATLE REVOCABLE TRUST, THE L. HATLE TRUST, DATED DECEMBER 30, 1991, KENNEDY FUNDING, INC., JEFFREY WOLFER, KEVIN WOLFER, AND GREGG WOLFER.<br><br>Defendants. | Docket No.: 13-cv-0537<br><br>OPINION |

**WILLIAM J. MARTINI, U.S.D.J.:**

In January 2013, Plaintiff Ronald R. Peterson, Chapter 7 Trustee for the entity KD8 ("Trustee"), brought this bankruptcy and contract action against Kennedy Funding, Inc. ("Kennedy") and Hans Imhof, Wells L. Marvin , and the Hatle Trusts (the "Guarantors" or "Defendant Guarantors").[1] The litigation concerns a $37 million loan issued by Kennedy as "agent" of KD8 and other lenders to Clearwater Development, Inc. ("Clearwater" or "CDI") in October 2007. The loan was executed together with a $23 million guaranty (the "Guaranty") by Defendant Guarantors. Plaintiffs' Second Amended Complaint was filed on January 29, 2014. ECF No. 101. On May 8, 2017, this Court denied Defendants' motion for summary judgment.[2] The matter now comes before the Court pursuant to 28 U.S.C.

---

[1] Also named as defendants are Jeffrey Wolfer, Kevin Wolfer, and Gregg Wolfer (the "Wolfers"), who at relevant times owned and managed Kennedy Funding.

[2] The Court also ruled on three additional motions. The Court granted in part Plaintiffs' motion for summary judgment as to Counts 5 and 6, relating to Kennedy's breach of the Co-Lenders Agreement. Damages are reserved for trial. Separately, the Court denied the Wolfers' motion for

1292(b) on Defendants' motion for interlocutory appellate review of four issues arising from the Court's decision. The motion is decided on the papers. Fed. R. Civ. P. 78(b). For the following reasons, Guarantors' motion to certify an order for interlocutory appeal is **DENIED**.

I.   BACKGROUND

The following facts are limited to those pertinent to Defendant Guarantors' motion seeking interlocutory appeal.[3] This matter concerns a $37 million loan issued in October of 2007 to Clearwater for the development of a golf course in Gypsum, Colorado. The Loan Documents designated Kennedy as "agent" for a group of co-lenders not listed in the original Loan Documents. One of the Loan Documents was a $23 million guaranty executed by Defendant Guarantors. In November 2007, Kennedy entered into the Co-Lenders Agreement ("CLA") with Plaintiff KD8 (represented here by Trustee) and several other co-lenders, allocating 43.33% interest in the Loan to KD8.[4] The Guaranty and the CLA contain conflicting provisions regarding Kennedy's authority to release Guarantors or otherwise modify the Loan Documents. Whereas the Loan Documents permits Kennedy to release Guarantors with the consent of lenders holding 50% interest in the Loan, the CLA requires unanimous consent of *all* co-lenders—KD8 included—before Guarantors can be released.

Plaintiff KD8 filed for bankruptcy in October 2008, whereupon Mr. Peterson was appointed Chapter 7 Trustee. Clearwater defaulted on the loan in January 2009. In July 2009, amid the global financial crisis, Kennedy agreed—without the knowledge or consent of Trustee—to a Modification Agreement (the "Modification") releasing Guarantors from their $23 million obligation. In exchange, Guarantors made an immediate payment of $500,000 to Kennedy and promised to spend $1.5 million in each of the following two years to maintain the collateral real estate, in accordance with an accompanying Property Management Agreement ("PMA").

Trustee maintains that the Modification is unenforceable because the CLA requires the unanimous consent of all co-lenders (KD8 included) to release Guarantors from the Guaranty. And assuming the Modification were valid, Trustee argues that Guarantors did not "substantially perform" under the Modification, thereby voiding the Modification and preserving the terms of the original Loan Documents. Trustee also claims that the Modification was a "postpetition transfer," avoidable under 11 U.S.C. § 549, as well as a violation of the Bankruptcy Code's automatic stay provision. 11 U.S.C. § 362(a)(3).

---

summary judgment and denied Guarantors' motion to strike the declarations of Daniel Dooley and Ronald R. Peterson. *See* ECF No. 187, 19.

[3] For a more comprehensive discussion of the facts, see the Court's May 8 Opinion. ECF No. 187.

[4] Kennedy or entities associated with Kennedy retained a majority stake in the Loan. *See* May 8, 2017 Opinion at 3, ECF No. 187. Neither the Guarantors nor Clearwater was party to the CLA.

Although Trustee stated during his deposition that he was unaware of the Modification until August 2011, the Guarantors insist that Trustee knew of the Modification and release by January 2010, at the very latest. This is an unresolved and material question of fact; if Trustee knew about the Modification in 2010, the bankruptcy claims (Counts 1 and 4) are presumptively barred by the Bankruptcy Code's two-year statute of limitations, but if Trustee became aware in August 2011 then the limitations provision does not apply. Meanwhile, Trustee argues that Guarantors cannot assert the limitations defense because a provision in the Guaranty explicitly waives "[a]ny statute of limitations affecting the liability of the undersigned . . . under the Loan Documents or the enforcement thereof . . . ." Guaranty §(m).

On May 8, 2017, this Court issued an order and opinion (the "Opinion") denying Defendant Guarantors' motion for summary judgment[5] and partly granting Plaintiffs' motion for summary judgment against Kennedy for breach of the CLA (Counts 5 and 6). ECF No. 187. The Court denied Plaintiffs' motion for summary judgment on the bankruptcy and contract claims asserted in Counts 1 through 4.[6] Defendants now move to certify four separate issues for interlocutory appellate review.

## II.   LEGAL STANDARD

District courts have discretion to certify an interlocutory order for immediate appeal. 28 U.S.C. § 1292(b). *See In re Cendant Corp. Secs. Litig.*, 166 F. Supp. 2d 1, 13 (D.N.J. 2001). Because this marks a "deviation from the ordinary policy of avoiding 'piecemeal appellate review of trial court decisions,'" certification is "used sparingly." *Kapossy v. McGraw-Hill, Inc.*, 942 F. Supp. 996, 1001 (D.N.J. 1996) (citations omitted). The Court considers three criteria:[7] "[t]he order must (1) involve a 'controlling question of law,' (2) offer 'substantial ground for difference of opinion' as to its correctness, and (3) if appealed immediately 'materially advance the ultimate termination of the litigation.'" *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir. 1974) (quoting 28 U.S.C. § 1292(b)). The purpose of § 1292(b) is "to permit decision of legal issues as to which there is considerable question without requiring the parties first to participate in a trial that may be unnecessary." *Meyers v. Heffernan*, 2014 WL 7336792, at *3 (D.N.J. Dec. 22, 2014). Accordingly, "saving of time of the district court and of expense to the litigants" bears significantly on a court's decision to grant certification under § 1292(b). *Katz*, 496 F.2d at 755.

---

[5] The Court reserved the determination of damages for trial. The Court denied the Wolfer Defendants' motion for summary judgment and denied Guarantors' motion to strike two declarations submitted by Plaintiff. *See* ECF No. 187.

[6] Counts 7 through 11 were denied as moot. *See* ECF No. 187.

[7] "[E]ven if all three criteria under Section 1292(b) are met, the district court may still deny certification, as the decision is entirely within the district court's discretion." *Wyndham*, 10 F. Supp. 3d at 633 (D.N.J. 2014) (citations omitted).

## III. DISCUSSION

Defendant Guarantors seek immediate interlocutory review of four issues. Guarantors first contend that, if they failed to perform under the Modification, relief should be limited to "shortfall" damages specified in an accompanying Property Management Agreement ("PMA"), rather than rescission of the Modification altogether. Second, Guarantors argue that a contractual waiver of statutes of limitation is unenforceable because it is contrary to public policy insofar as it is applied to the Bankruptcy Code's two-year limitations period. Third, Guarantors argue that the Court should have imputed Kennedy's knowledge of the Modification to Trustee because Kennedy was acting as Trustee's "agent" under the Loan Documents. Fourth, Guarantors argue that the word "individual" in Section 362(k)(1) of the Bankruptcy Code, which allows aggrieved parties to "avoid" postpetition transfers, refers only to people and not to entities such as a KD8. The Court addresses each of these arguments below, and finds none suitable for immediate appellate review.

### A. Does the Alleged Shortfall of $200,000 Provide Grounds for Avoiding the Modification?

Paragraph 2 of the Modification states that Guarantors shall fund maintenance of the collateral property in the amount of $1.5 million for each of two years "in accordance with the Property Management Agreement," executed together with the Modification on July 17, 2009. In turn, the PMA states that if Guarantors spend less than $1.5 million in either year, the resulting "shortfall" would be applied to satisfy real estate taxes. Plaintiffs assert that Guarantors only spent $2.8 million of the $3 million promised in the Modification.[8] Defendants deny this fact and assert that, even if a $200,000 shortfall occurred, damages for breach of the Modification should be limited to $200,000, to be applied to real estate taxes as the PMA states. Putting aside the shortfall, and more important in the Court's eyes, Plaintiffs argue that the Modification should be voided because Guarantors "allowed the Property to fall into disrepair during the Maintenance Term . . . ." Pls. Opp. to Cert. 10. The Court denied summary judgment and preserved the issue of "substantial performance" for trial. Guarantors nonetheless seek review of whether damages should be limited to the amount of the shortfall (roughly $200,000) as the PMA indicates, or whether the Modification itself should be treated as void.

Guarantors' argument fails to raise a "controlling question of law as to which there is a substantial ground for a difference of opinion." *Katz*, 496 F.2d at 752. Trustee alleges that, regardless of whether Guarantors spent $3 million, Guarantors breached the Modification because they "allowed the Property to fall into disrepair." Pls. Opp. to Cert. 10. Based on this allegation, the controlling question of law is whether Trustee received "the benefit of the bargain," not whether Guarantors fully satisfied all technical

---

[8] This section does not address whether Kennedy, as an initial matter, had authority pursuant to the Loan Documents and CLA to execute the Modification.

requirement of the Modification. *See Weisman v. New Jersey Dept. of Human Services*, 817 F.supp.2d 456, 461 (D.N.J. 2011); *Magnet Res., Inc. v. Summit MRI, Inc.*, 723 A.2d 976, 981 (N.J. App. Div. 1998). Plaintiffs, for example, allege that Guarantors exposed the property to various legal encumbrances and failed to "take . . . active steps" to physically preserve the property during Colorado's "mud season." *See* Peterson Depo. 109:1-110:5. If true, these assertions would "defeat the purpose of the [Modification]." *Magnet Res., Inc. v. Summit MRI, Inc.*, 723 A.2d 976, 981 (N.J. App. Div. 1998) ("[A] material breach by either party to a bilateral contract excuses the other party from rendering any further contractual performance."). The fact that discovery has concluded further suggests that interlocutory review would not "materially advance the ultimate termination of the litigation." *Katz*, 496 F.2d at 754. *See Kapossy*, 942 F. Supp. at 1004.

### B. Enforceability of the Guaranty's Waiver Provision as to the Bankruptcy Code's Statute of Limitations

Because the Modification was signed July 17, 2009, and the original Complaint was filed more than two years later, on April 27, 2012, Guarantors invoke the two-year statute of limitations on claims under § 362 and § 549. 11 U.S.C. § 549(d)(1). In response, Trustee points to a broad waiver provision in the Guaranty, which explicitly waives "any statute of limitations affecting [] liability . . . under the Loan Documents or the enforcement hereof, to the extent permitted by law." Guaranty § 4(m). The Court held the waiver to be enforceable against Guarantors because the provision is explicit and the parties are sophisticated. Opinion 15, ECF No. 187. Guarantors seek interlocutory review on two grounds.

First, Guarantors argue that the waiver provision applies only to defenses "under the Loan Documents," and not to defenses against enforcing the Modification. This argument has no lift. The Modification itself clearly implicates the enforcement of the Loan Documents. Indeed, the Guaranty waiver refers to "Any statute of limitations affecting the liability of the undersigned . . . under the Loan Documents *or the enforcement thereof* . . . ." Guaranty Ex. F. at 2(m), ECF No. 157 (emphasis added). There is no "controlling question of law" or "substantial grounds for difference of opinion." *Katz*, 496 F.2d at 752.

Guarantors' second argument requires closer analysis. They submit that, as a matter of public policy, a party should not be able to waive its limitations defense under Sections 362 and 549, "particularly where it is a lender seeking to avoid the loan documents, as modified." Br. in Supp. Guarantors' Mot. to Cert. Order for Inter. App. 7. This arguably amounts to a "controlling question of law"—one that is "serious to the conduct of the litigation in a practical or legal sense"—because it could dispose of Trustee's bankruptcy claims (Counts 1 and 4). *See Florence*, 657 F.Supp.2d at 508.

Nonetheless, Guarantors fail to establish a "substantial ground for difference of opinion" as to "whether [the] waiver is contrary to public policy in connection with Section

5

549 and 362 claims . . . ." Defs.' Reply Br. in Supp. Mot. to Cert. an Order for Interlocutory App. 7. Guarantors neither cite legal precedent for this proposition nor develop a logical argument supporting it. *See In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996) ("[T]he mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion. Rather, "[i]t is the duty of the district judge . . . to analyze the strength of the arguments in opposition to the challenged ruling.") (citations omitted). In its May 8 summary judgment opinion, the Court decided to enforce the waiver provision because it found the provision to be "specific and unambiguous" and because the parties are sophisticated. May 8, 2017 Opinion 15, ECF No. 187. *See Feinstein v. B.D.S. Remodeling Services*, 2005 WL 704290, at *3 (Mar. 21, 2005); *Norwest Bank Minnesota v. Blair Road Assoc., L.P.*, 252 F.Supp.2d 86, 94 (D.N.J. 2003). Case law also suggests that parties may contract around the statutory limitations provided in 28 U.S.C. § 546. *See In re Shape*, 138 B.R. 334 (D. Maine Bankruptcy Ct. Apr. 1992).[9]

Further, granting interlocutory review of this issue would not "materially advance termination of the litigation." *See Katz*, 496 F.2d at 75. A Section 1292(b) certification "materially advances the ultimate termination of the litigation where the interlocutory appeal eliminates: (1) the need for trial; (2) complex issues that would complicate trial; or (3) issues that would make discovery more costly or burdensome." *F.T.C. v. Wyndham Worldwide Corp.*, 10 F. Supp. 3d 602, 635 (D.N.J. 2014), aff'd, 799 F.3d 236 (3d Cir. 2015) (citations omitted). Barring the bankruptcy claims (Counts 1 and 4) as untimely would not eliminate the need to try the contract claims (Counts 2 and 3), which hinge on whether Guarantors "substantially performed" the terms of the Modification. Nor would it prevent an inquiry into the Trustee's knowledge of the Modification, which is relevant to the Trustee's equitable tolling argument. *See In re Liberty Brands, LLC*, 476 B.R. 443, 450 (Bankr. D. Del. 2012) (Equitable tolling is appropriate where "the defendant has actively misled the plaintiff respecting the plaintiff's cause of action"); *In re Bookout Holsteins, Inc.*, 100 B.R.427, 430 (Bankr. N.D. Ind. 1989)(Section 549 "can be equitably tolled where the postpetition transfers the trustee seeks to avoid have been concealed"). Again, the fact that discovery has taken place also weighs against certification. *See Wyndham*, 10 F. Supp. 3d at 635 (citations omitted); *N.J. Protection & Advocacy, Inc. v. N.J. Dep't of Educ.*, 2008 WL 4692345, at *3 (D.N.J. Oct. 8, 2008) (Certification for interlocutory appellate review "is more likely to materially advance the litigation where the appeal occurs early in the litigation, before extensive discovery has taken place . . ."). Interlocutory appeal of this issue would not be appropriate.

---

[9] [I]t is not improper . . . to look to jurisdictions outside the one in which the Court sits when examining whether substantial grounds for disagreement on a given issue exist." *Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 657 F. Supp. 2d 504, 509 (D.N.J. 2009).

### C. Whether Kennedy's Knowledge of the Release should be imputed to the Trustee

Guarantors' argued at summary judgment that the Trustee's bankruptcy claims (Counts 1 and 4) are barred by the doctrine of laches. Laches applies if a defendant can prove "(1) inexcusable delay by the plaintiffs in bringing suit; and (2) prejudice to the defendant from the delay." *Gruca v. U.S. Steel Corp.*, 495 F.2d 1252, 1258 (3d Cir. 1974). Whether Trustee's "delay in bringing suit" was "inexcusable" depends largely on when Trustee became aware of the Modification's existence. Unable to resolve this question of fact without a trial, the Court denied Guarantors' motion for summary judgment on Counts 1 and 4. *Merisant Co. v. McNeil Nutritionals, LLC*, 515 F. Supp. 2d 509, 516 (E.D. Pa. 2007) (quoting *Country Floors, Inc. v. Gepner*, 930 F.2d 1056, 1066 (3d Cir.1991)) ("Laches 'usually requires the kind of record only created by full trial on the merits' because 'the correct disposition of the equitable defense of laches can only be made by a close scrutiny of the particular facts and a balancing of the respective interests and equities of the parties, as well as of the general public.'").

Guarantors maintain that Kennedy's knowledge of the Modification should be imputed to the Trustee, because Kennedy entered the Modification while acting as "agent" on behalf all co-lenders under Loan Documents. Because Trustee "knew" about the Modification as soon as it occurred, Guarantors reason, his delay in bringing suit cannot be characterized as "excusable." Trustee responds that Kennedy exceeded the scope of the agency relationship as delineated in the CLA by agreeing to release the Guarantors without Trustee's consent, as the CLA requires.[10] *See* CLA ¶ 6(e)(4).

Guarantors' imputation theory does not raise a "controlling question of law," because the argument presumes that Kennedy was acting within its capacity as agent for the co-lenders, which it was not. *See* May 8 Opinion, ECF No. 187. Imputation is only proper if the "agent has discharged his duty to disclose to his principal all material information which the agent obtained." *NCP Litig. Trust v. KPMG*, 945 A.2d 132, 147 (N.J. Super. Ct. Law. Div. 2007). But if "the agent is engaged in acts that are entirely adverse to his principal, then the presumption dissolves." *Id. See also Tilden v. Barber*, 268 F. 587, 605 (D.N.J. 1920) ("The rule imputing agents' knowledge to the principal is intended to protect those exercising good faith and not as a shield for unfair dealing.") Although the CLA refers to Kennedy as "agent" on behalf of KD8 and the other lenders, the Court found at summary judgment that Kennedy exceeded the bounds of its authority under the CLA by failing to obtain Trustee's consent to release Guarantors. *See* May 8 Opinion, at 15-17, ECF No. 187. Specifically, Trustee maintains that Kennedy "methodically conceal[ed] all documents and communications that would put them on notice of the Releases." Pls.' Reply Br. in Supp. Pls.' Mot. for Summ. J. 16, ECF No. 180.

---

[10] Trustee maintains it did not learn about the Modification until a later date—sometime in August 2011— which would fall within the two-year limitations period.

Because the Guarantors' imputation theory rests on disputed facts, Guarantors again fail to present a "controlling question of law" fit for immediate appellate review.

### D. KD8's eligibility for damages as an "individual" under 11 U.S.C. 362(k)

Bankruptcy Code § 362 "operates as a stay, applicable to all entities, of . . . any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). "[An] individual injured by any willful violation of a stay provided by this section shall recover actual damages . . . ." 11 U.S.C. § 362(k). Guarantors argue that "individual" refers only to actual persons and not to entities like KD8.

Because Trustee does not in fact seek damages, there is "no controlling question of law" as to § 362(k). Trustee instead seeks enforcement of an automatic stay under § 362(a), which explicitly protects "all entities." 11 U.S.C. § 362(a). And, even if Trustee were seeking damages under § 362(k), the Third Circuit has interpreted "individual" to encompass legal entities. *See In re Atl. Bus. Cmty. Corp.*, 901 F.2d 325, 329 (3d Cir. 1990). Certification for interlocutory appeal of this issue is denied.

### IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Guarantor Defendants' motion to certify an order for interlocutory appeal of this Court's May 8, 2017, Opinion denying Defendants' motion for summary judgment.

/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

**August 10, 2017**